IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA L. BRICKER, ) | |
| Plaintiff, ) | |
| ) | 10-cv-458 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

December 2, 2010

**I. Introduction**

Plaintiff, Tanya L. Bricker ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*.

**II. Background**

**A. Facts**

Plaintiff was born on August 5, 1996. (R. 12, 24)[1]. At the time of the hearing, Plaintiff was in the seventh grade and attending Albert Gallatin North. (R. 25-26). Plaintiff was not enrolled in any special education courses. (*Id.*). Plaintiff's alleged

---

[1] The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g) of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as ("R. _).

1

onset of her disability is July 10, 2007, due to asthma, acid reflux, ear infections, and sore throats. (R. 112, 126). The record reflects that Plaintiff has not engaged in substantial gainful activity. (R. 12).

### B. Procedural History

Plaintiff initially filed her application for SSI on July 10, 2007. (R. 112-14). Plaintiff claimed disability as of the date of her application. (*Id.*). Plaintiff's claim was denied at the initial level of administrative review and, thereafter, Plaintiff filed a timely request for a hearing. (R. 51, 56). An administrative hearing was held on January 8, 2009, before Administrative Law Judge George A. Mills, III ("ALJ"). (R. 20-50). Plaintiff and her mother, Ms. Karen Verbus, testified at the hearing. (R. 24-49).

On March 9, 2009, the ALJ rendered an unfavorable decision in which he determined that Plaintiff did not have any medically determinable impairments, whether considered individually or in combination, that presented symptoms sufficient to meet or medically equal the severity criteria of any listed impairment. (R. 15-26). Therefore, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Act. (R. 26). The ALJ's decision became the final decision of the Commissioner on February 26, 2010, when the Appeals Council denied Plaintiff's request for review. (R. 1-4).

On April 7, 2010, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the Commissioner's decision. (Document No. 1). The parties have filed cross-motions for summary judgment. (Document Nos. 10 & 13). Plaintiff contends that the ALJ erred as a matter of law in failing to find that her mental impairment was "severe" within the meaning of the Act. (Document No. 11, 10). Plaintiff also argues that the ALJ failed to properly consider evidence of her repeated

treatments at hospital emergency rooms. (Document No. 11, 12). The Commissioner contends that the ALJ's decision is supported by substantial evidence. (Document No. 14). For the reasons that follow, the Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III. Legal Analysis

#### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g),1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

Children seeking SSI benefits must qualify as being disabled under the Act. *Sykes v. Barnhart,* 84 Fed. Appx. 210, 212 (3d Cir. 2003). Disability is established when the claimant demonstrates "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Social Security regulations ("regulations") set forth a three-step sequential

evaluation process that the Commissioner must follow to determine childhood disability. 20 C.F.R. § 416.924. When applying the sequential evaluation process, "the burden of proof rests on the claimant at each [of the three] step[s]." *R.J. v Astrue,* 08-1416, 2009 WL 2413924, at *4 (S.D.Ind. July 24, 2009). To establish disability the claimant must demonstrate: (1) that she was not working; (2) that she had a "severe" impairment or combination of impairments; and (3) that her impairment or combination of impairments met, medically equaled, or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

The regulations provide that to determine whether the child's impairment(s) functionally equal the listings, "[a] child's functional limitations will be evaluated in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself or himself; and (6) health and physical well-being." *Hairston ex rel. Rowe v. Barnhart,* 54 Fed. Appx. 41, 43 (3d Cir.2002) (citing 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).

A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(e)(2)). When the Commissioner considers whether a child has marked or extreme limitations in any domain, he examines the evidence in the record on how the child's functioning is limited because of her impairments and "compare[s] [that child's] functioning to the typical functioning of children her age who do not have impairments." 20 C.F.R. § 416.926a(f)(1).

4

A marked limitation exists when an impairment interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "Marked limitation also means a limitation that is more than moderate but less than extreme." 20 C.F.R. § 416.926a(e)(2)(i) (internal quotation marks omitted). An extreme limitation exists when an impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). "Extreme limitation also means a limitation that is more than marked." *Id.* (internal quotation marks omitted).

### B.  The ALJ's Decision

In his decision, the ALJ followed the three-step sequential evaluation process and concluded that Plaintiff was not "disabled" within the meaning of the Act. (R. 9-19). Plaintiff was born on August 5, 1996, and was defined as a "school-age child" as of her alleged disability onset as well as the date of the ALJ's decision. (R. 12). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. (*Id.*). At step two, the ALJ found Plaintiff to be suffering from "asthma, allergies, gastroesophagheal reflux, and a right ear infection." (*Id.*). At step three, the ALJ concluded that Plaintiff did not have any medically determinable impairments, whether considered individually or in combination, that had presented symptoms sufficient to meet or medically equal the severity criteria for any of the listed impairments in Appendix 1, Subpart P, Regulation #4. (*Id.*); 20 C.F.R. §§ 416.924, 416.925, 416.926.

In considering whether Plaintiff had an impairment or combination of impairments that functionally equaled the listings, the ALJ determined that Plaintiff had no limitations

in acquiring and using information, attending and completing tasks, interacting and relating with others, or caring for herself. (R. 14-18). The ALJ also determined that Plaintiff had less than moderate limitations in moving about and manipulating objects and less than marked limitations in her health and physical well-being. (R. 17-18). Therefore, the ALJ concluded that Plaintiff had not been disabled since July 10, 2007, Plaintiff's alleged disability onset date. (R. 19).

### C. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck,* 181 F.3d at 431.

   *1. The ALJ's Determination that Plaintiff's Alleged Mental Impairment was Not Severe is Supported by Substantial Evidence*

Plaintiff contends that the ALJ erred in concluding that her mental impairment was not "severe" within the meaning of the Act. (Document No. 11, 10). Specifically, Plaintiff argues that her adjustment disorder constituted a severe impairment because it was diagnosed and documented by her treating psychiatrist. (*Id.*) The Commissioner contends that the ALJ's decision at step two is supported by substantial evidence. (Document No. 19, 19).

The Commissioner's severity determination at step two, like every step in the sequential analysis is upheld if supported by substantial evidence of the record as a

6

whole. *McCrea v. Barnhart*, 370 F.3d 357, 360-61 (3d Cir. 2004). In a child's claim for benefits, an impairment is not severe if the evidence establishes no more than a minimal effect on a claimant's ability to function in an age-appropriate manner. *See* 20 C.F.R. § 415.924(c). While doubts are resolved in favor of the plaintiff, the plaintiff bears the burden to show she suffers from a severe impairment. *McCrea*, 370 F.3d at 359. Although there may be contradictory evidence in the record, it is not cause for remand or reversal of the Commissioner's decision if substantial support for the ALJ's determination exists. *Sykes*, 228 F.3d at 262.

Plaintiff submitted evidence that she had a diagnosed mental impairment. After completing a psychiatric evaluation of Plaintiff on June 26, 2008, psychiatrist Dr. Furman diagnosed Plaintiff with "adjustment disorder of latency with disturbance of emotion and conduct, rule out Depressive Disorder." (R. 512). Dr. Furman assessed Plaintiff's Global Assessment of Functioning ("GAF") at 50. (*Id.*). Plaintiff was prescribed a trial of Prozac and Dr. Furman recommended outpatient counseling. (*Id.*). However, a diagnosis alone does not establish entitlement to benefits, a claimant must show that the impairment results in disabling limitations. *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). Here, there is no evidence that Plaintiff's adjustment disorder resulted in limitations which would have more than a minimal effect on her ability to function in an age-appropriate manner.

Medical treatment notes from various providers do not document that Plaintiff had any functional limitations. Indeed, the ALJ noted that when Plaintiff was evaluated by Dr. Furman on February 19, 2008, the only psychiatric complaint was that she was fighting with her sisters. (R. 12). Additionally, although Plaintiff had participated in

7

counseling during the relevant time period, "she and her mother testified that she no longer takes her medication and her mother testified that she saw no difference in the claimant when she stopped her medication." (*Id.*). The record reveals that Plaintiff stopped attending counseling as early as June 2008. (R. 505). Dr. Haggerty, from Clark Sleeths Family Medicine Center ("Clark Sleeths"), and Ms. Marilyn Calloway, from Chestnut Ridge Counseling Services, reported that Plaintiff behaved appropriately during her appointments. (R. 283, 514). Ms. Calloway also reported that Plaintiff exhibited no anxiety and was not depressed. (R. 514, 519). During her emergency room visits, Plaintiff's psychiatric condition was unremarkable. (R. 227, 251, 295, 422).

Furthermore, although Plaintiff argues that her alleged anger and mood problems, difficulty sleeping, fatigue, and indifference manifest that her mental impairment is severe there were no documented difficulties as a result of Plaintiff's mental health impairment beyond anger and difficult behavior at home directed towards her mother and sisters. (R. 512). Outside of the family unit, Plaintiff did not demonstrate any difficulty with her interpersonal relationships. (R. 45-46, 30-31). Consistent with the record, the ALJ noted that "the issues addressed in counseling revolved around family relationships and any symptoms of anger the claimant may have been experiencing did not affect her ability to function appropriately in all of the domains addressed by the Social Security Administrations' regulations as discussed below." (R. 12).

Testimony from Plaintiff also fails to demonstrate any documented mental limitations which would affect her ability to function in an age-appropriate manner and evidence of her wide-range of daily activities contradicts her contention that she has a

8

severe mental impairment. (R. 42-49). Plaintiff testified that she does well in school and was not failing any classes. (R. 43). She testified that she rides the bus to school and had never had any problems. (R. 44). Plaintiff plays team sports such as baseball, basketball, and soccer and is able to understand and follow the rules. (*Id.*). Plaintiff testified that she had friends at school and was in the Girl Scouts. (R. 45-46). Furthermore, Plaintiff relayed that she could take care of her personal needs and care for her pets. (R. 46-47). Additionally, Ms. Verbus indicated that Plaintiff had friends at school and made friends easily. (R. 16, 30-31). Ms. Verbus also reported that Plaintiff knew how to "take turns" and interact with others at Girl Scouts and during team sports. (R. 30). Both Plaintiff and Ms. Verbus testified that she voluntarily ceased taking Prozac and stopped attending counseling on her own. (R. 37-8, 48). Testimony from Plaintiff and her mother is consistent with the lack of any documented limitations resulting from a mental impairment in the record.

Finally, despite concluding that Plaintiff's adjustment disorder was not "severe", the ALJ specifically considered Plaintiff's claimed adjustment disorder in his analysis of whether her overall condition met, medically equaled, or functionally equaled any listed impairment. (R. 12-19). Plaintiff's mental health was directly addressed in the discussion of her limitations in the ability to acquire and use information and interact and relate with others. (R. 14-16). Given the ALJ's thorough discussion of Plaintiff's record and the lack of any evidence documenting mental limitations, his decision not to include any mental impairments at step two of the sequential evaluation process is supported by substantial evidence.

*2. The ALJ's Determination that Plaintiff Had Less than Marked Limitations in Her Health and Well-Being is Supported by Substantial Evidence*

Plaintiff also argues that the ALJ failed to properly consider evidence of her repeated treatments at hospital emergency rooms. (Document No. 11, 12-14). Plaintiff was treated at an emergency room on twelve occasions in 2007 and three occasions in 2008 for symptoms related to her asthma, allergies, gastroesophageal reflux disease ("GERD"), and chronic ear infections. (R. 290-495). Plaintiff contends that these emergency room treatments "clearly support a finding that [she] has an 'extreme' limitation in the health and physical well-being domain." (Document No. 11, 13).

Health and physical well-being is one of the six domains for which the ALJ was required to determine the extent of Plaintiff's limitations. 20 C.F.R. § 416.926a(l). The ALJ was obliged to consider the cumulative physical effects of Plaintiff's physical and mental impairments and their associated treatments or therapies on her functioning, which were not otherwise considered in moving about and manipulating objects. *Id.*

In order to demonstrate an "extreme" limitation, Plaintiff's impairments would have to interfere "very seriously" with her ability to independently initiate, sustain, or complete activities in the domain of health and physical well-being. 20 C.F.R. § 416.926(e)(3)(i). A claimant who has an "extreme" limitation in this domain will be "frequently" ill because of her impairment or have "frequent" exacerbations of her impairment that result in significant, documented symptoms or signs "substantially" in excess of the requirements for a showing of a "marked" limitation[2]. *Id.*

---

[2] A "marked" limitation is demonstrated by an average of three episodes of illness or exacerbations a year, or once every four months, each lasting two weeks or more; or

In determining Plaintiff's health and physical well-being, the ALJ first noted that Plaintiff had asthma, allergies, GERD, and chronic ear infections which cause limitations in her overall health and physical well-being. (R. 12). The ALJ then noted that Plaintiff had six emergency room visits in a four month time period in 2007 for various upper respiratory problems, including bronchitis, asthma, and mononucleosis. (*Id.*). Plaintiff's three emergency room visits in 2008 were also noted. (*Id.*).

Plaintiff's emergency room treatments do not contradict the ALJ's determination that she had less than marked limitations in her health and physical well-being. (R. 18). Plaintiff's emergency room treatments do not demonstrate three episodes of illness a year lasting two weeks or more or "frequent" exacerbations of her condition that resulted in significant, documented symptoms or signs "substantially" in excess of "marked" limitations. (R. 177-255, 290-495); *See* 20 C.F.R. §416.926a(e)(2)(iv). Despite the number of Plaintiff's emergency room treatments, the ALJ noted that she had not required any inpatient hospitalizations. (R. 13). Physical examinations and medical tests performed during Plaintiff's emergency room treatments were within normal limits. (R. 179-80, 193-94, 203-04, 209, 227, 234-35). Further, the ALJ noted that Plaintiff's treatment records at Clark Sleeths during times when she sought emergency room treatment only included "indications of severity ranging from stable to moderately persistent asthma and changes in the claimant's medication regimen." (R. 18, 264-65).

---

the claimant must have episodes that occur more than three times a year or once every four months but do not last for two weeks; or occur less often than an average of three times a year or once every four months, but last longer than two weeks, if the overall effect (based upon the episode(s) or its frequency) is equivalent in severity. 20 C.F.R. § 416.926a(e)(2)(iv).

A conservative treatment record also supports the ALJ's conclusion that Plaintiff had less than marked limitations in her health and physical well-being. Plaintiff was treated by allergy and asthma specialist Dr. Ogershok only once every six months from July 2007 until September 2008. (R. 275-80, 527-535). During Plaintiff's first evaluation, Dr. Ogershok noted normal pulmonary function studies and only a few positive allergy tests. (R. 18, 277-78, 280, 527, 529-35). Instead of prescribing more intense treatment, Dr. Ogershok expressed concern that Plaintiff may be overusing her inhaler. (R. 280). When Plaintiff was next seen in March 2008 for an upper respiratory infection, her pulmonary function tests were normal and her sinus x-rays were clear. (R. 277-78). Plaintiff's tests revealed similarly unremarkable findings in August and September 2008. (R. 275, 527-28). In his most recent treatment note, Dr. Ogershok described Plaintiff's asthma as "mild" and "intermittent." (R. 528). Plaintiff did not regularly take oral steroids or asthma controller medication and did not need to use a breathing machine. (R. 34-35, 275, 280).

Further, a consultative evaluation supports the ALJ's determination at step three. State agency physician, Dr. Tran, reviewed Plaintiff's file and determined that her asthma, recurrent ear infection and sore throat, and acid reflux did not functionally equal the listings. (R. 268). Dr. Tran also concluded that Plaintiff had less than marked limitations in her health and physical well-being. (R. 270). The ALJ was required to consider Dr. Tran's findings as opinion evidence. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *See also* 20 C.F.R. § 416.927(f)(2)(i). The ALJ cited Dr. Tran's determination that Plaintiff had less than marked limitations in her health and physical well-being in support of his step three determination. (R. 18).

Notably, the ALJ found that even if Plaintiff's and Ms. Verbus' "testimony were accepted as fully credible, Plaintiff's impairments do not cause marked limitations in two domains as required by the regulations." (R. 13). Ms. Verbus testified that Plaintiff did not need any special help to function in her daily life. (R. 34). Ms. Verbus also completed a functional report which indicated that Plaintiff had no difficulty engaging in physical activities and taking care of her personal needs. (R. 139-44). Plaintiff was able to complete her chores which included washing the dishes and sweeping and mopping the floors. (R. 47). Plaintiff rode a bicycle and jumped on her trampoline. (R.44). Plaintiff testified that if she had an asthma attack while playing sports, she would ask to take a break and use her inhaler. (R. 48). Testimony from Plaintiff and Ms. Verbus does not demonstrate extreme, or even marked, limitations in Plaintiff's health and physical well-being.

In sum, the ALJ thoroughly addressed Plaintiff's physical and mental impairments in his decision. (R. 9-19). The United States Court of Appeals for the Third Circuit requires an ALJ to "fully develop the record and explain his findings," which is what the ALJ did here. *Burnett v. Comm'r of Social Security,* 220 F.3d 112, 119 (3d Cir.2000). The ALJ's explanation of his decision enables meaningful judicial review because it is comprehensive and analytical and includes a statement of the facts in support. *See Yensick v. Barnhart*, 245 Fed. Appx. 176, 181 (3d Cir. 2007). Plaintiff's emergency room visits were adequately addressed and when viewed in light of the record as a whole do not support a finding that she had "marked" or "extreme" limitations in this domain. Therefore, because there is such relevant evidence as a reasonable mind

might accept as adequate, the ALJ's decision is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001).

**D. Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces. However, under the applicable standards of review and the current state of the record, this Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

For these reasons, this Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by the Plaintiff. (Document Nos. 13 & 10, respectively).

An appropriate order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANYA L. BRICKER,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | 10-cv-458 |

## ORDER OF COURT

AND NOW, this 2nd day of December, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Tanya L. Bricker (Document No. 10) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 13) is **GRANTED**; and

3. The Clerk of Court will docket this case as closed.

                                 BY THE COURT:

                                 s/Terrence F. McVerry
                                 United States District Court Judge

cc:      Paul Kovac, Esquire
          Assistant U.S. Attorney
          Western District of Pennsylvania
          paul.kovac@usdoj.gov

          Gregory T. Kunkel, Esquire
          Kunkel & Fink, LLP
          greg.kunkel@verizon.net